1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLGA M. BOWLES, | ) 1:09cv0926 DLB |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Olga M. Bowles ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on November 22, 2006, alleging disability since March 31, 2002, due to hepatitis C, high blood pressure, depression, high cholesterol, anxiety, fatigue and auditory and visual hallucinations. AR 90-99, 120-129. After Plaintiff's application was denied

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

initially and on reconsideration, she requested a hearing before an Administrative Law Judge

("ALJ").  AR 54-58, 62-66, 67.  On November 12, 2008, ALJ Steven W. Webster held a hearing.

AR 21-41.  He denied benefits on March 4, 2009.  AR 9-20.  The Appeals Council denied review

on April 29, 2009.  AR 1-3.

Hearing Testimony

ALJ Webster held a hearing on November 12, 2008, in Fresno, California.  Plaintiff

appeared with her attorney, Anthony Gonzalez.  Vocational expert ("VE") Judith Nigerian also

appeared and testified.  AR 21.

Plaintiff testified that she was born in 1950 and lives with her husband.  AR 24-25.  She

does not have a driver's license and relies on the bus for transportation.  AR 25.  Plaintiff

received her GED and has an AA in general studies.  AR 26.  When she was on welfare, she went

to the Chavez Business School to learn typing.  AR 27.

Plaintiff can take care of personal grooming needs "for the most part" and can do very

little cooking and cleaning.  AR 25-26.  She does laundry about once a month.  AR 26.  Plaintiff

testified that she does "not understand" television and that when she puts it on, she cannot follow

the storyline and turns it off.  She sees double when she reads.  AR 26.

Plaintiff explained that she gets up about 8:00 a.m., takes her pills and goes back to bed.

She spends most of the day in bed.  She does not eat and has lost 30 pounds.  Plaintiff also talks

to her husband during the day and goes to bed about 7:00 p.m.  AR 27-28.  She wakes up about

every two hours.  AR 28.

Plaintiff testified that she has hepatitis C, asthma, depression and anxiety.  AR 29.  She

sees a counselor at Fresno County Mental Health every two weeks and sees a doctor once every

one to two months.  AR 29-30.  Plaintiff thought that she could sit for about 15 to 20 minutes

because she starts getting anxious and gets up and walks about.  AR 30.  She could stand for

about 10 to 15 minutes and walk a half-block.  AR 30.  She can lift a "couple" gallons of milk.

AR 31.

In describing her depression, Plaintiff testified that she feels like "everything's going wrong in the world."  She also began hearing voices, but they have lessened since she started medication.  AR 31.  Plaintiff tries to ignore the voices by going back to bed.  AR 32.

When questioned by her attorney, Plaintiff testified that she checked herself into the hospital for depression in July 2008 and stayed for three or four days.  AR 33.  She was hearing voices that told her that she was no good and that she should swallow some pills.  AR 34.  Plaintiff took some pills and had planned to commit suicide.  AR 34.  Her medications were changed while she was hospitalized.  AR 33.  She currently takes Prozac, Wellbutrin and Abilify and takes the medications as prescribed.  AR 33.

Plaintiff estimated that she stays in bed for 16 to 17 hours a day and only gets out of bed when she has to go somewhere.  AR 35.

Plaintiff testified that while her application was pending, she applied for job openings.  To help in her job search, she has been attending a program through Fresno County Mental Health for the past seven months where she types and attends a program that helps with her attention.  She has problems with attention, though, and is forgetful.  She has not been attending for the past four or five weeks.  AR 36-37.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work history.  This person would be limited to simple, repetitive work.  The VE testified that this person could perform Plaintiff's past work in housekeeping and as a "sorter of merchandise or garments."  AR 38.

For the second hypothetical, the ALJ asked the VE to assume that this person could not complete an eight hour day or a 40 hour work week.  The VE testified that this person could not perform Plaintiff's past work or any other work in the national economy.  AR 39.

<u>Medical Record</u>

Plaintiff has a history of hypertension, asthma, hepatitis C, pneumonia, arthritis and hyperlipidemia.  She used drugs, but quit in 1995.  AR 178, 182, 209, 324.

An October 2003 ultrasound of Plaintiff's abdomen was unremarkable.  AR 183.

Plaintiff's treating physician, Ben Rad, M.D., diagnosed her with depression in November 2004.  AR 277.  He also diagnosed her with depression several times from 2005 through 2007, but did not prescribe any medication.  AR 276, 309, 381, 383, 389

Plaintiff received treatment from Fresno County Mental Health for depression in December 2004.  She reported "some level" of moderate depression, but spent most of the time discussing her hepatitis C.  Plaintiff needed a therapist's approval to begin Interferon treatment.  She stated that her depression began after her hepatitis C diagnosis.  Plaintiff was currently in the Office Assistant Program at the Chavez School.  On mental status examination, Plaintiff was calm and cooperative, though her speech was slowed and underproductive.  Her mood was anxious and her affect was blunted.  Plaintiff denied hallucinations and current suicidal ideations, but explained that she had attempted suicide twice in the past.  Her memory, judgment and insight were fair.  Plaintiff's current GAF score was 51.  Richard Morgott, Ph.D., LMFT, diagnosed moderate depression with associated anxiety.  Plaintiff was taking an anti-anxiety medication prescribed by her treating physician, but was not on an anti-depressant and did not request to see a psychiatrist.  Instead, Plaintiff focused on receiving a referral for Interferon.  AR 247-252.

On February 15, 2005, Plaintiff saw a counselor at Fresno County Mental Health when she needed a referral to a hepatitis specialist.  She reported that she was going to school and getting trained "for business."  She was doing well, though she reported getting depressed at times because her husband's health was declining.  AR 228.  Plaintiff's case was ultimately closed on April 5, 2005, due to non-participation and loss of contact.  AR 236.

An August 2006 ultrasound of Plaintiff's abdomen showed fatty infiltration of the liver, but was otherwise normal.  AR 190.

On November 2, 2006, Plaintiff saw Sharon L. Silva, LCSW, at Fresno County Mental Health.  She reported that she has a lot of anxiety and anger, and that she has lost weight because she doesn't care to eat.  On mental status examination, her mood was euthymic and her behavior was calm.  Her affect was appropriate, though mildly blunted.  Plaintiff denied hallucinations and suicidal ideations.  Memory, insight and judgment were good, as was her general fund of

knowledge.  Plaintiff's GAF score was 60.  Plaintiff was diagnosed with depression, not otherwise specified, by history, anxiety disorder, not otherwise specified, by history, and polysubstance dependence in full sustained remission.  She was referred to various support groups.  AR 241-243.

On November 7, 2006, Plaintiff reported during group therapy that she was very angry about what was going on in her life and wanted to know how to deal with the anger.  Her husband was recently diagnosed with hepatitis C and her 19 year old son no longer needed her.  AR 224.

On November 28, 2007, Plaintiff reported that she was upset and angry and felt like she was being mistreated by Fresno County Mental Health and by society.  Plaintiff was upset with the staff because she was sent to group therapy rather than individual therapy.  She was also unhappy with her medication.  AR 221.

On January 2, 2007, Richard Eidenschink, LMFT noted that Plaintiff was benefitting a lot from group therapy and was less depressed, less irritable and had "greatly increased" motivation.  Plaintiff also had more energy and was learning how to use other community resources.  AR 370.

On January 9, 2007, Plaintiff told Mr. Eidenschink that she was pleased with her progress in group therapy and felt happier and more empowered.  Her affect was bright.  Plaintiff was less depressed and less irritable than when she first began group therapy.  AR 369.

Group notes from January 23, 2007, indicate that Plaintiff made good progress in the group and now rated herself as an 8 out of 10.  After 10 group sessions, Plaintiff was now "much calmer, more confident, more assertive, more loving with her husband and son."  AR 213-222.  Plaintiff indicated that she intended to continue receiving support.  AR 213.

Plaintiff saw Emmauel J. Fantone, M.D., on January 27, 2007, for a mental health assessment.  Plaintiff reported that her depression had worsened recently due to her husband's illness.  He noted that Plaintiff had moderate to severe depression for the past 10 years and moderate to severe anxiety for the past year.  She had slight to moderate problems with attention/concentration and had a moderate problem with hallucinations for the past 3-6 months.  Her symptoms included depression, auditory/visual hallucinations, anxiety and a strained

relationship with her husband.  Dr. Fantone diagnosed dysthymic disorder, depressive disorder, not otherwise specified and psychotic disorder, not otherwise specified.  Her GAF was 55.  Dr. Fantone noted that there was a "probability of significant deterioration."  He recommended that Plaintiff attend 24 therapy sessions over the next year and prescribed Fluoxetine and Risperdol.  AR 345-349.

On February 26, 2007, Dr. Fantone increased Plaintiff's medication.  AR 349.

On March 13, 2007, State Agency physician Glenn Ikawa, M.D, completed a Psychiatric Review Technique Form.  He found that Plaintiff had the medically determinable impairments of psychotic disorder, not otherwise specified and depressive disorder, not otherwise specified.  In rating Plaintiff's functional limitations, Dr. Ikawa opined that Plaintiff would have mild restrictions in activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence and pace.  She did not have any repeated episodes of decompensation.  AR 350-360.

In a Mental Residual Functional Capacity Assessment form completed on the same day, Dr. Ikawa opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions.  Plaintiff could sustain simple, repetitive tasks and would be able to adapt and relate.  AR 361-363.

The record also contain a case analysis completed by Holly S. Bauer on March 13, 2007.  Ms. Bauer conducted a 75 minute phone interview with Plaintiff and noted that she had no difficulty answering questions, concentrating or understanding.  Ms. Bauer also noted that Plaintiff cares for her disabled husband, prepares simple meals, does household chores, walks and uses public transportation.  Plaintiff reported that she "does okay with instruction" but has problems with memory, concentration, and getting along with others.  She sees and hears things and doesn't handle stress well.  Ms. Bauer, citing her interview and her review of the medical records, concluded that Plaintiff could perform at least simple, repetitive tasks.  AR 364-365.  Dr. Ikawa agreed with this assessment.  AR 366.

Plaintiff attended group therapy on March 13, 2007, after not coming for a while.  She reported that she was doing pretty well and has learned to be around her husband when he is

complaining. She denied suicidal ideation. AR 368. Plaintiff was administratively discharged from Fresno County Mental Health on March 13, 2007, because she was not involved in any other services as she got her medication outside of Mental Health. AR 367.

Dr. Fantone increased Plaintiff's medication again in April 2007. AR 401.

On May 21, 2007, Dr. Fantone completed a Mental Residual Functional Capacity Questionnaire. He has seen Plaintiff monthly since January 2007 and last saw her on May 21. He diagnosed dysthymic disorder and bipolar disorder and listed her prognosis as guarded. Plaintiff's GAF was 55 and she has had a poor response to treatment. Plaintiff's symptoms included loss of interest in almost all activities, appetite disturbance with weight change, episodes of manic and depressive symptoms, difficulty thinking or concentrating, easy distractability, emotional lability, generalized persistent anxiety, a history of multiple physical symptoms, illogical thinking, mood disturbances, oddities of thought, paranoid thinking, and persistent disturbances of mood or affect. Dr. Fantone believed that Plaintiff's impairments were reasonably consistent with her symptoms and functional limitations. AR 402-404.

Dr. Fantone opined that Plaintiff was markedly limited in her ability to remember locations and work-like procedures, and in her ability to understand, remember and carry out very short and simple instructions. Plaintiff was also markedly limited in her ability to carry out simple instructions, but only moderately limited in her ability to carry out detailed instructions. Her ability to maintain attention and concentration for extended periods was moderately limited, as was her ability to perform activities within a schedule, maintain regular attendance and sustain an ordinary routine without special supervision. She was markedly limited in her ability to work in coordination or proximity to others without being distracted and in her ability to make simple work-related decisions. Plaintiff's ability to complete a normal work-day and work-week without interruption from psychologically based symptoms was also markedly limited. Plaintiff was moderately limited in her ability to interact appropriately with the public and accept instructions and respond appropriately to criticism from supervisors. Plaintiff's ability to ask simple questions or request assistance, get along with co-workers and maintain socially appropriate behavior was markedly limited. She had marked limitations in her ability to respond

1   appropriately to changes in the work setting, travel in unfamiliar places or use public

2   transportation and set realistic goals.  Plaintiff had moderate limitations in her ability to be aware

3   of normal hazards and tolerate normal levels of stress.  AR 405-407.

4   On July 16, 2007, State Agency physician J. V. Glaser, M.D., affirmed the prior finding

5   that Plaintiff was capable of simple repetitive tasks.  AR 408-409.

6   On July 28, 2007, Plaintiff was brought to Crisis Intervention Services on a 5150 hold

7   after she took medication in a suicide attempt.  Plaintiff was discharged from Fresno County

8   Mental Health because she reported hearing voices that told her to kill herself and she would not

9   "contract" for her safety.  Plaintiff was transferred to the Psychiatric Assessment Center for

10   Treatment ("PACT") for her safety.  AR 422-428.  She was discharged from PACT to the

11   hospital on the same day, July 28.  AR 437, 441.

12   Plaintiff saw Micki Laffen, LMFT, on December 14, 2007.  Her mood was depressed and

13   her affect was flat.  Eye contact was poor, speech was slowed and delayed and she generally

14   seemed very distant.  Plaintiff was diagnosed with major depressive disorder, recurrent, severe

15   with psychosis.  AR 513.

16   On December 20, 2007, Plaintiff's mood continued to be very depressed.  Her affect was

17   flat, eye contact was poor and her physical movement was slowed.  AR 511.

18   Plaintiff returned to Fresno County Mental Health in January 8, 2008, hoping "to be able

19   to function better."  Plaintiff reported experiencing depression most of the day, nearly every day

20   and a loss of interest in previous activities such as reading.  Her physical movements were slow

21   and her energy and concentration were poor.  Plaintiff reported hearing voices that tell her to hurt

22   herself about once a week.  Mr. Laffen opined that personality disorder and thought disorder

23   should be ruled out and recommended a treatment plan of one year in duration.  AR 410.

24   Plaintiff returned to see Mr. Laffen on February 19, 2008.  She was obviously very

25   depressed.  Her eye contact was worse than usual and her physical movements were very slow.

26   Plaintiff admitted that she had thoughts of harming herself but committed to contacting someone

27   if she felt she was moving in that direction.  AR 502.

28

Plaintiff was placed on another 5150 hold on February 20, 2008, when she threatened to kill herself.  AR 449.  Upon admission to PACT, Plaintiff had a flat affect and depressed mood. She complained of auditory hallucinations that told her to harm herself, as well as visual hallucinations of things crawling over the dishes and peripheral shadows.  Plaintiff also reported using marijuana daily.  She had stopped taking Risperdal on February 18, though resumed upon admission.  During her hospitalization, Plaintiff was provided with therapy and pharmacological intervention.  Plaintiff reported that she felt better and that the voices were quiet.  Although she was encouraged to consider continued hospitalization in light of her recent severe suicidal ideation, she declined and was able to articulate a safety plan.  Plaintiff's husband supported her release and she was discharged on February 23, 2008.  Upon discharge, she was diagnosed with major depressive disorder, recurrent, severe with psychotic features, and cannabis dependence. She was taking Prozac, Abilify, Wellbutrin, Lotensin and Toprol.  Her prognosis was guarded. AR 448-452.

On March 10, 2008, Mr. Laffen notes a diagnosis of schizophrenia, undifferentiated type, though there is no indication that Plaintiff was examined that day.  Rather, the notation appears to be made in the context of scheduling Plaintiff's next evaluation.  AR 501.

On April 1, 2008, Plaintiff underwent a psychiatric evaluation performed by Marina C. Vea, M.D., at Fresno County Mental Health.  Plaintiff complained of depression, hearing voices and anxiety.  On examination, Plaintiff was mildly depressed.  She denied current suicidal ideations.  Dr. Vea diagnosed psychotic disorder, not otherwise specified, rule out schizoaffective disorder.  She was instructed to continue her medications.  AR 416-417.

Plaintiff returned to Dr. Vea on June 17, 2008.  She was still depressed, but not as severely.  On examination, her mood was mildly depressed secondary to her economic situation and food stamp cut-off.  Her affect was average and insight and judgment were fair.  Dr. Vea diagnosed psychotic disorder, not otherwise specified and instructed her to continue her medication.  AR 414.

On July 22, 2008, Plaintiff reported that she was hearing voices and was under financial stress.  Her mood was depressed and her affective range was normal.  Enrique Friedman, M.D.,

noted that schizophrenia should be ruled out.  He diagnosed major depressive disorder, recurrent, severe with psychosis.  AR 413, 481.

On August 13, 2008, Plaintiff returned to Dr. Friedman.  She reported feeling more self-assertive at home and felt that her depression was lifting.  Her mood and affective range were normal, as was insight and judgment.  AR 412.

On October 8, 2008, returned to Fresno County Mental Health for medication management and saw Cynthia Fowler, M.D.  She reported a decrease in auditory hallucinations and somewhat improved depression.  She reported seeing stationary "shadows" in her peripheral vision three times a week.  Plaintiff reported stress with her husband's illness, her problems, issues related to her son and financial strain.  Her medications were "somewhat" effective and produced no side effects.  On mental status examination, Plaintiff's mood was depressed and her affect was blunted.  Her intelligence was average and insight and judgment were normal.  Dr. Fowler diagnosed major depression, recurrent, severe with psychotic features and instructed Plaintiff to continue with Abilify, fluoxetine and Wellbutrin.  AR 411.

ALJ's Findings

The ALJ determined that Plaintiff's depression was a severe impairment that did not meet or medically equal a listed impairment.  AR 11-17.  Despite her impairment, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with a limitation to simple, routine and repetitive work.  AR 18.  With this RFC, the ALJ found that Plaintiff could perform her past relevant work as a housekeeper.  AR 19.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (depression) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) can perform her past relevant work as a housekeeper. AR 11-19.

Here, Plaintiff argues that the ALJ (1) failed to properly assess the severity of Plaintiff's mental condition; and (2) failed to properly assess her and her husband's credibility.

**DISCUSSION**

A.    Plaintiff's Mental Impairment

Plaintiff contends that the ALJ erred by finding that she was capable of performing simple, repetitive tasks on a sustained basis.  In so arguing, Plaintiff believes that the ALJ erred in rejecting Dr. Fantone's opinion in favor of those of the State Agency physicians.[2]

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

[2] Defendant fails to address this argument.

12

1    The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

2  that justifies the rejection of the opinion of either an examining physician or a treating physician.

3  *Pitzer,* 908 F.2d at 506 n. 4; *Gallant,* 753 F.2d at 1456.   In some cases, however, the ALJ can

4  reject the opinion of a treating or examining physician, based in part on the testimony of a

5  nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th

6  Cir.1989); *Andrews,* 53 F.3d at 1043; *Roberts v. Shalala,* 66 F.3d 179 (9th Cir.1995).  For

7  example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating

8  physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the

9  opinions of Magallanes's treating physicians...."  *Magallanes,* 881 F.2d at 752 (emphasis in

10  original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ

11  also relied on laboratory test results, on contrary reports from examining physicians, and on

12  testimony from the claimant that conflicted with her treating physician's opinion.  *Id.* at 751-52.

13    The record in this action contains three opinions.  The first opinion, dated March 13,

14  2007, is from State Agency physician Ikawa and supports a finding that Plaintiff could perform

15  simple, repetitive tasks.  The second opinion, dated May 21, 2007, is from Plaintiff's treating

16  physician, Dr. Fantone.  As of that date, Dr. Fantone had been treating Plaintiff for four months

17  and his limitations would render Plaintiff unable to perform work activity.  The third opinion,

18  dated July 17, 2007, is State Agency physician Glaser's affirmation of Dr. Ikawa's prior opinion

19  that Plaintiff could perform simple, repetitive tasks.

20    In formulating Plaintiff's RFC, the ALJ adopted Dr. Ikawa and Dr. Glaser's opinion that

21  Plaintiff could perform simple, repetitive tasks.  AR 19.  He therefore rejected the treating

22  source's opinion in favor of two nonexamining opinions.  The opinions of nontreating,

23  nonexamining physicians may serve as substantial evidence to reject the treating physician's

24  findings when the opinions are consistent with independent clinical findings or other evidence in

25  the record.  *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter,* 242

26  F.3d 1144, 1148 (9th Cir. 2001) (opinion of nonexamining medical expert may serve as

27  substantial evidence when it is consistent with other independent evidence in the record).

28

1   The key to resolving this issue is Plaintiff's specific argument- that while she may be able
2   to perform simple, repetitive tasks for a period of time, her recurrent depression prevents her
3   from performing *sustained* work activity.  Plaintiff admits that neither the State Agency opinions
4   nor Dr. Fantone's opinion fully address the affects of Plaintiff's recurrent depression, but argues
5   that Dr. Fantone's opinion is more consistent with the overall record.

6   This Court agrees.  The weight of the medical evidence is not consistent with the State
7   Agency physicians' opinion that Plaintiff can perform sustained work activity and therefore does
8   not support the ALJ's adoption of their opinions over that of Dr. Fantone.

9   The medical record demonstrates that Plaintiff was consistently diagnosed with
10   depression since 2004, though the severity of the depression varied.  Beginning in late 2006,
11   when Plaintiff began group therapy, the variations in the severity of Plaintiff's depression
12   became more extreme.  She began therapy very angry and depressed, but improved by January
13   23, 2007, the date of her last session.

14   Plaintiff began seeing Dr. Fantone on January 27, 2007, and it appears that her mental
15   impairments stabilized for a few months.  Although Dr. Fantone increased Plaintiff's medication
16   in February 2007, she reported in March 2007 that she was doing pretty well.

17   In April 2007, Dr. Fantone increased Plaintiff's medications again.  Plaintiff's mental
18   condition deteriorated significantly by July 2007, when she was hospitalized after a suicide
19   attempt.  The record also contains numerous reports of auditory and visual hallucinations during
20   this time.

21   By December 2007, Plaintiff's condition had not improved.  On December 14, 2007,
22   Plaintiff's mood was depressed and her affect was flat.  Eye contact was poor, speech was slowed
23   and delayed, and she was generally very distant.  She was diagnosed with major depressive
24   disorder, recurrent, severe with psychosis.  On December 20, 2007, Plaintiff's mood continued to
25   be very depressed.  Her affect was flat, eye contact was poor and her physical movement was
26   slowed.  AR 511.

27
28

Plaintiff's deterioration culminated in another 5150 hold in February 2008.  Her auditory and visual hallucinations continued and her mental status examinations repeatedly demonstrated depressed mood and flat affect.

By August 2008, Plaintiff reported an improvement in her depression.  In October 2008, she again reported that her depression had somewhat improved, though she was still having visual hallucinations.  Her mood was depressed and her affect blunted.  The last diagnosis in the record consists of major depression, recurrent, severe with psychotic features.

Based on this record and the substantial deference that should be afforded to a treating source, *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the ALJ's decision to adopt the State Agency physicians' opinions was not supported by substantial evidence Their finding that Plaintiff could perform sustained work activity is not consistent with the record, which shows significant vacillations in Plaintiff's condition during the relevant time period.

In fact, Dr. Ikawa's March 2007 opinion, which was ultimately affirmed in July 2007, was set forth during a period of time when Plaintiff had improved and was relatively stable.

It also appears that the ALJ improperly attached more weight to Dr. Ikawa's opinion based on what he described as a 75 minute telephone interview conducted by an "examining agency program psychologist."  AR 19.  This "interview" was conducted by case analyst Holly S. Bauer and there is no indication that she is a psychologist or other acceptable medical source.  Nor is there any indication that the telephone conversation included any type of diagnostic or objective testing that would suggest it was an "examination."  Moreover, claimants are routinely contacted by the Administration during the application process and such contact does not alter the nature of, and weight to be afforded to, a nonexamining opinion.

This action should therefore be remanded.  The remedy will be discussed at the end of this opinion.

B.      Credibility Issues

Plaintiff next argues that the ALJ failed to properly assess her testimony, as well as that of her husband, Keith Bowles.

1.      *Plaintiff's Testimony*

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other
> non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).
> However, to discredit a claimant's testimony when a medical impairment has been
> established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*,
> 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why
> the [claimant's] testimony is unpersuasive." *Id.*  Where, as here, the ALJ did not find
> "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the
> claimant's testimony must be clear and convincing." *Id.*

> Social Security Administration rulings specify the proper bases for rejection of a
> claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be
> supported by reasons that do not comport with the agency's rules.  *See* 67 Fed.Reg. at
> 57860 ("Although Social Security Rulings do not have the same force and effect as the
> statute or regulations, they are binding on all components of the Social Security
> Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see*
> *Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at
> step three of the disability determination was contrary to agency regulations and rulings
> and therefore warranted remand).  Factors that an ALJ may consider in weighing a
> claimant's credibility include reputation for truthfulness, inconsistencies in testimony or
> between testimony and conduct, daily activities, and "unexplained, or inadequately
> explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*,
> 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

In rejecting Plaintiff's testimony, the ALJ relies first on inconsistencies between

Plaintiff's testimony at the hearing and information she provided in the Adult Function Report,

dated March 1, 2007.  AR 138.  For example, although Plaintiff testified that she does laundry

monthly and washes the floor, the ALJ noted that she reported that she did laundry every two

weeks and occasionally vacuumed.  AR 16.  He also notes that Plaintiff reported that she loses

track while counting money, but testified that she uses a calculator when shopping for groceries.

AR 16.

These distinctions, assuming that the facts can even be characterized as distinct, are

slight.  Certainly, the fact that Plaintiff reported that she occasionally vacuumed but testified that

she washed the floor, is not a sufficient inconsistency to question Plaintiff's credibility.  The

ALJ's characterization of Plaintiff's abilities regarding money is also misplaced.  That she uses a

calculator to budget her money while shopping actually supports her report that she loses track when counting money.

The ALJ next cites apparent contradictions in Plaintiff's television watching and reading. He explains that although Plaintiff testified that she is unable to understand television programs and turns the television off, she elsewhere reported that she watches television daily.  AR 16. The ALJ also found that although Plaintiff testified that she sees double, she did not report trouble with reading, wears glasses while reading, and was able to type at business school.  AR 16.  Similarly, the ALJ concludes that Plaintiff is not "isolative" because she goes out with friends once in a while and attends several groups.  Again, these statements are not necessarily contradictions, especially given the ups and downs of Plaintiff's impairment.  While she may be able to watch television or perform other activities some days, the record shows that the severity of her mental impairment, and thus her abilities, varies dramatically.

The ALJ further determines that "it is only reasonable to believe that if, as of her alleged onset date of March 2002, she had had the difficulties she professes that she would have sought treatment at that time."  AR 17.  He continues, "yet she did not seek psychological therapy until late 2004 and that was to be cleared for Interferon treatment.  Her next treatment occurred two years later, in late 2006."  AR 17.  The ALJ's assumption ignores the nature of a mental illness, however.  As the Ninth Circuit noted in *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), "it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness."  It is improper to hold Plaintiff's failure to seek treatment against her given the severity of her depression.

The ALJ next cites Plaintiff's GAF scores and concludes that they are "not indicative of disabling mental limitations."  AR 17.  However, the ALJ's own recitation of Plaintiff's GAF scores show scores ranging from 45-60.  Such scores indicate moderate to serious symptoms. *Diagnostic and Statistical Manual of Mental Disorders* at 34 (4th ed., text revision).

Finally, the ALJ determines that Plaintiff's attempt to find work is inconsistent with disabling mental conditions.  AR 17.  Yet given the varying nature of Plaintiff's condition and

her specific argument that she cannot perform sustained work activity, her attempt to find work does not necessarily detract from her credibility.   *See also Lingenfelter v. Astrue,* 504 F.3d 1028 (9th Cir. 2007) (Where a claimant tried to work for a short period of time and failed because of his impairment, such evidence does not support a finding that the claimant did not experience pain and limitations severe enough to preclude him from maintaining substantial gainful activity).

The ALJ therefore fails to set forth clear and convincing reasons for rejecting Plaintiff's testimony.

   2.   *Mr. Bowles' Testimony*

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r,* 454 F.3d 1050, 1053 (9th Cir.2006); *see also* 20 C.F.R. §§ 404.1513(d)(4), (e). Such testimony is competent evidence and "cannot be disregarded without comment." *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir.1996). If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness." *Id.* Further, the reasons "germane to each witness" must be specific. *Stout,* 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

The ALJ set forth statements made by Mr. Bowles in his November 28, 2007, correspondence. AR 171-172. For example, Mr. Bowles explained that Plaintiff has always had a problem with low self-esteem and has episodes of self-harm. Plaintiff believed that admitting to a mental health problem was "taboo," and she has had another overdose since seeking treatment. Mr. Bowles also stated that Plaintiff's medications have made her a "virtual zombie." AR 16-17.

The ALJ also summarizes Mr. Bowles' Third Party Function Report dated February 27, 2007. For example, Plaintiff sometimes goes with friends to religious services. She also feeds him and helps him with medications. She shops for food and feeds the pets and is able to vacuum and clean the kitchen and bathroom. Mr. Bowles also noted that Plaintiff does not change her clothes very often and bathes once or twice a week. He also believes that she hears

voices.  He described her as very agitated and argumentative and noted that she has constant mood swings.  Mr. Bowles stated that he is sometimes uncomfortable being around her.  AR 16-17, 130-137.

The ALJ rejects Mr. Bowles' testimony for the same reasons he rejected Plaintiff's testimony.  For the reasons stated above, the reasons are not valid.  AR 17.

The Court finds that the ALJ's credibility analysis of Plaintiff and her husband is not supported by substantial evidence.

C.    Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."  In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

The Court finds that remand for further proceedings is appropriate and perhaps necessary.  While the ALJ committed error outright by adopting the State Agency physicians' opinions, Dr. Fantone's opinion may not be fully supported based on the records before the Court.  The quality of his opinion does not change the result, however, as the State Agency physicians' opinions were not consistent with the overall medical record and did not constitute substantial evidence to support the ALJ's analysis.

1

        On remand, the ALJ shall further develop the medical record to allow for a complete and

2   thorough analysis of Plaintiff's impairment for the period at issue.  As Plaintiff is insured through

3   December 31, 2007, and must show disability before that date, the assistance of a medical expert

4   may be useful to analyze the records during the relevant period.

5        IT IS SO ORDERED.

6    **Dated:    May 10, 2010**              **/s/ Dennis L. Beck**
                                          UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28